### JOHN F. PATTERSON v. STATE OF OHIO.

1. PROOF REQUIRED TO ESTABLISH ASSAULT TO COMMIT RAPE.

To establish the offense of assault with intent to commit rape, the evidence must show beyond a reasonable doubt that the assault was made with intent to commit rape, against the will of the party assaulted, and to use whatever degree of force might be necessary to overcome any resistance she might make.

2. EVIDENCE OF CONDUCT AND ACTS OF ACCUSED.

The intent to use whatever force might be necessary to overcome resistance, may be shown by the conduct and acts of the accused in his efforts to attain his purpose; whatever these may have been at the time of the occurrence, or immediately thereafter, are proper to be considered to determine whether such intent existed in his mind at the time of perpetration of the offense charged was attempted.

HEARD ON ERROR.

*C. D. Saviers,* for plaintiff in error.

SULLIVAN, J.

The plaintiff in error, at the September term, 1900, of the court of common pleas, was found guilty of an assault with intent to commit rape upon the person of Eva Pike.

Motion for a new trial was made, which was overruled, and plaintiff in error was sentenced to the penitentiary for the period of five years.

Patterson v. State.

Execution of sentence was suspended to enable the accused to prose-cute error to this court from the judgment of the court below against him.

One of the several grounds of the motion for a new trial was that the verdict was manifestly against the weight of the evidence, which is assigned as one of the several grounds of error set forth in plaintiff's petition in error, and the only one insisted upon.

To establish this offense against the party accused, the evidence must show beyond a reasonable doubt that the assault was made with intent to commit rape against the will of the party assaulted, and to use whatever degree of force might be necessary to overcome any resistance she might make. To attempt to carnally know a female of the age of the party assailed in this case, without such intent, would not be an offense under the statute under which the accused was convicted. If the act was committed with her consent, then he would not be guilty of the offense charged against him. Smith v. State, 12 Ohio St., 466; O'Mara v. State, 17 Ohio St., 515.

The question then is, does the evidence, as presented in the bill of exceptions, show that the accused intended to ravish the assailed, against her will, and in his attempt, to use whatever force that might be neces-sary to overcome any resistance she might make to accomplish his pur-pose. This may be shown, as is necessary in nearly all cases of this character, by the conduct and acts of the accused in his efforts to attain his purpose; whatever these may have been at the time of the occur-rence, or immediately thereafter, are proper to be considered to deter-mine whether such intent existed in his mind at the time the perpetra-tion of the offense charged was attempted. The testimony of the little girl is substantially this: That on the afternoon of the day that the offense is charged to have been committed, she was sitting on the front door step of the house where she lived, and the accused came and took her back into a shed just off and abutting the alley, not saying to her what he wanted with her; said he would give her five cents, which he did not do. After entering the shed he took down her panties and told her to kneel down, which injunction she did not obey. That he had taken down her drawers about two minutes before directing her to kneel down, and just as he directed her to kneel down two men came. Before this he had taken something out of his pants; outside of taking down her clothing, he at no time laid his hands upon her in any manner, nor did he attempt to touch her with what he took out of his trousers; said she didn't kneel down, because she did not want to. This consti-tutes all the evidence as to what he did or said to the girl, except the evidence of the witnesses who saw him taking her down the alley into the shed. When he was taking down her drawers, she does not say she resisted him, nor when she refused to kneel down, did he attempt to compel her to do so. Aside from taking down her drawers and asking her to kneel down, he made no further attempts to assault her. It is possible that she may have been too frightened to have offered resist-ance, but she was not interrogated by the state upon this point, nor is there any other evidence, tending to show that she was, except perhaps that of William Woodward, who followed them down to the shed, who says "she was crying," whilst the other witness, Boerer, who followed Woodward down, says "that she looked as though she had been crying." Aside from these witnesses, between whom there is a difference as to whether she had been crying or not, no evidence was offered to show the

mental condition of the girl immediately after the occurrence. She was not asked, when on the stand, whether she was frightened or whether she had cried whilst the accused was doing the things she states he did do, nor whether she resisted the taking down her drawers. Whilst it is possible that a girl of her age would be frightened at such liberties with her person, yet this, in the absence of evidence, in a criminal case at least, cannot be assumed. All these acts could have been committed by the accused without any intent upon his part to commit a rape upon the girl. No force at all was attempted as shown by her evidence, unless the taking down of her drawers could be construed as constituting force. She did not resist this. If she did not do so because she was rendered incapable of doing it by fright, or from some other cause over which she had no control, such fact should appear from the evidence. However harsh the rule may seem in a case so repulsive in its features as this one is, yet the intent to use the degree of force to constitute the offense cannot be presumed against the accused, it being one of the elements constituting the crime charged against him. There are several adjudicated cases in which the evidence was of much greater weight than the evidence of the girl in this, when the courts of last resort, recognized as the highest authority, held the evidence to be insufficient to sustain the charge. Notably among these is the Commonwealth v. Orlando Merrill, 14 Gray (80 Mass.), 515; State v. Kendall, 73 Ia., 225; State v. Canada, 68 Ia., 397.

We do not think the evidence of Boerer and Woodward is of any additional weight to that of the girl, upon the question of force.

However reluctant we are to disturb the verdict in this case, yet personal disinclination cannot be indulged at the sacrifice of duty. An outrage so repulsive, naturally inflames public sentiment against the perpetrator, and though it lacks the essential elements (or rather the evidence of it) of the offense charged, yet we think it is easy to be perceived how the jury could lose sight entirely of the lack of such element and convict from what they would regard an honest view of the case.

The judgment will be reversed and cause remanded for the reason that the verdict is so manifestly against the weight of the evidence as indicates bias and prejudice.

Let exception be noted. We find no other errors apparent upon the record prejudicial to plaintiff in error.